## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**WAYMOUTH FARMS, INC.**                                    Civil No. 05-1505 (JNE/SRN)

              **Plaintiff,**

**v.**                                                      <u>**REPORT AND**</u>
                                                <u>**RECOMMENDATION**</u>

**RAISIN VALLEY FARMS, LLC, RAISIN
VALLEY FARMS MARKETING, LLC, and
MARVIN and LAURA HORNE d/b/a RAISIN
VALLEY FARMS**

              **Defendants.**

---

James E. Springer, II, Esq. and John P. Mandler, Esq. on behalf of Plaintiffs

Andrew P. Moratzka, Esq. and Shane H. Anderson, Esq. on behalf of Defendants

---

SUSAN RICHARD NELSON,  United States Magistrate Judge

The above-entitled matter comes before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss (Doc. No. 8).  This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.     BACKGROUND

Waymouth Farms, Inc. (Waymouth) is a Minnesota food processing company which develops, packages, and markets snack foods.  (Claiborn Aff. ¶ 2.)  Waymouth entered into three sales contracts with Raisin Valley Farms, the assumed name of California raisin producers and packers Marvin and Laura Horne, for the purchase of approximately 35,000 thirty pound cases of raisins (<u>Id.</u> ¶¶ 7-13) after Raisin Valley Farms represented to Waymouth that Raisin Valley Farms could supply Waymouth's annual requirement of raisins for the 2003-2004 crop year (<u>Id.</u> ¶ 6).  According to

Waymouth, two of the contracts were entered into on September 29, 2003 and one was entered into on December 4, 2003.  (Id.)  At least at the time the contracts were entered, Raisin Valley Farms was the assumed business name of California raisin producers and packers Marvin and Laura Horne.  (Compl. ¶ 3.)  According to Waymouth's Complaint, "The contracts specified that Waymouth was contracting with Raisin Valley Farms, yet various letters, invoices, and other documentation refer to Raisin Valley Farms, LLC, Raisin Valley Farms Marketing, LLC, and Raisin Valley Farms interchangeably."  (Id. ¶ 7.)

Waymouth and Raisin Valley Farms each used brokers to effect the raisin contracts.   Waymouth used the services of the Sterling Corporation (Claiborn Aff. ¶ 4) and Raisin Valley Farms used the services of the Pacific/Atlantic Crop Exchange, Inc. (PACE) (Horne Aff. ¶ 9).

The PACE confirmations of the September 29, 2003 and December 3, 2003 sales of raisins lists the seller as "Raisin Valley Farms, 3678 N. Modoc, Kerman, CA 93630" and the buyer as "Waymouth Farms, 5300 Boone Avenue, New Hope, MN 55428."  (Horne Aff. Exs. C-D.)  The September 29, 2003 and December 3, 2003 confirmations appear to have been sent to Raisin Valley Farms via facsimile by PACE on the day of each sale.  (See id.)  The confirmations state, "The parties acknowledge and agree that Pacific/Atlantic Crop Exchange, Inc. is acting as a broker in this transaction and cannot control and shall have no liability for delivery of goods, quality, or timeliness of shipments.  All obligations under this agreement are between buyer and seller as principal."  (Id.)

Marvin Horne concedes he "believe[d]" he knew "[i]n late November or early

2

December" of 2003 that the customer for the raisins was Waymouth Farms.  (Horne Aff. ¶ 22.)  Each of the contracts were "FOB California," which meant Raisin Valley Farms would take shrink-wrapped pallets containing cases of raisins to its staging location at its plant in Kerman, California to await pick-up by a trucking company.  (Id. ¶ 27.)  When picking up the raisins, a trucking company would leave Raisin Valley Farms a bill of lading.  (Id. ¶ 29.)  For example, the February 18, 2004 bill of lading indicates that "Eagan Transportation" received 1300 thirty-pound cases of "low moisture . . . select raisins" and 100 thirty-pound cases of "fancy golden raisins" from "Raisin Valley Farms" that were "consigned [to] Waymouth Farms 5300 Boone Ave New Hope, MN 55428." (Id. Ex. F.)

As part of these contracts, Waymouth alleges that, from January 2004 through June 2004, Raisin Valley Farms delivered to Waymouth, for pick-up in California, raisins containing buckshot.  (Claiborn Aff. ¶ 12.)  The buckshot was found though the use of a metal detector when examining the raisins after the raisins arrived at Waymouth's Minnesota facility.  (Horne Aff. Ex. H.)  Waymouth also alleges that Raisin Valley Farms failed to deliver the quantity of raisins required under the contracts.  (Claiborn ¶ 19.)  Mr. Horne acknowledges that he "had some direct written communications with Waymouth Farms and on behalf of Raisin Valley Farms after Waymouth Farms began taking loads of raisins from us but not paying for them as required by the sales agreement. . . . I communicated directly with Waymouth Farms about this."  (Horne Aff. ¶ 32.)  For example, in a letter dated December 26, 2003 and on Raisin Valley Farms stationery, Horne wrote to Waymouth Farms:

Review of your account indicates you have not paid invoice #5045 dated 10-

> 21-2003 or invoice # 5070 dated 11-5-03.  Our contract for delivery clearly states a maximum of thirty days (30) credit.  Please be advised that you have violated the terms of our contract and no further deliveries will be made.  Please remit all delinquent invoices within 24 hours or your account will be sent for collection action.

(Id. Ex. G.)  Mr. Horne also states that he "had telephone conversations with the Waymouth Farms representatives about their claims [that] there was 'buckshot' in the raisins purchased from Raisin Valley Farms."  (Id. ¶ 37.)  In a follow-up letter to these conversations, Mr. Horne again wrote to Waymouth farms in a letter dated May 28, 2004 and on Raisin Valley Farms stationery in which Horne stated in part, "I inspected our metal detector log for all raisins shipped from our plant to Waymouth Farms, Inc. . . . I requested our operating manager to make a slow run of the raisins destined for delivery to you."  (Id. Ex. I.)  Horne continued:

> I discussed this matter with my attorney and my product liability insurance agent.  They both recommended we do not continue our relationship at this time. . . . After several violations of our contract, I only continued to ship upon certification by our broker that you would pay according to the contract.  You again have failed to comply with our contract.  You were delinquent on invoices 148 & 157 and are currently delinquent on invoice #206 dated 4-21-04.  Therefore, no further raisins will be shipped to Waymouth Farms, Inc. pending resolution of all issues.

(Id.)  In June 2004, Raisin Valley Farms communicated to Waymouth's agent that Raisin Valley Farms was willing to continue to ship Waymouth raisins on a load to load basis.  (Claiborn Aff. Ex. E.)

On July 25, 2005, Waymouth filed this lawsuit against Raisin Valley Farms, LLC, Raisin Valley Farms Marketing, LLC, and Marvin and Laura Horne d/b/a Raisin Valley Farms.  (Compl. at 1.)  The Court heard oral argument on Defendants' motion to dismiss the claims against Marvin and Laura Horne d/b/a Raisin Valley Farms for lack of

personal jurisdiction and to dismiss the claims against the LLC entities for failure to state a claim upon which relief may be granted.  (Doc. No. 8.)

## II.   PARTIES' POSITIONS

### A.   Personal Jurisdiction Over Marvin and Laura Horne d/b/a Raisin Valley Farms

Defendants argue that the only contact Raisin Valley Farms had with Minnesota was through its California broker and that all negotiations and purchase agreements for the sale of raisins to Waymouth went through that broker.  (Defs.' Mem. at 17.) Moreover, while Defendants concede Raisin Valley Farms had a contract with Waymouth, Defendants contend that additional contacts with Minnesota are needed for this Court to possess jurisdiction over Raisin Valley Farms.  (Id.)  Defendants represent that Raisin Valley Farms is not licensed to do business, does not advertise, does not maintain a website accessible in, and has no other presence in Minnesota.  (Id.) Defendants assert that the subject raisin sales all occurred in California because the raisins were shipped "FOB California" and that Waymouth arranged and paid to ship the raisins from California to Minnesota.  (Id.)  Finally, Defendants argue that, even if Raisin Valley Farms has sufficient minimum contacts with Minnesota, the Court should find that requiring Raisin Valley Farms to participate in litigation in Minnesota is unreasonable because the burden borne by Raisin Valley Farms in litigating the case in Minnesota outweighs Waymouth's and Minnesota's interest in making them litigate here.

Waymouth responds that specific personal jurisdiction over Raisin Valley Farms exists because (1) Raisin Valley Farms' telephonic and written communications with Minnesota extended over several months and, whether through Raisin Valley Farms'

broker or through Raisin Valley Farms directly, concerned negotiating and modifying the contracts at issue in this litigation; and (2) Raisin Valley Farms knew the raisins were ultimately being shipped to Minnesota, for use in a Minnesota facility, and the raisins were ultimately found defective in Minnesota.  (Pl.'s Response at 11-14.)

**B.      Claims Against the LLCs**

Defendants also move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims against Raisin Valley Farms, LLC and Raisin Valley Farms Marketing, LLC for failure to state a claim against these entities.  (Defs.' Mem. at 2.) Defendants argue that neither of these LLCs existed prior to May 2005 and therefore could not have entered into contracts with Waymouth in September and December of 2003.  (Id. at 3.)

Waymouth responds that Defendants' motion to dismiss the LLCs is really a premature summary judgment motion in which Defendants rely on matters outside the pleadings in support of their motion.  (Pl.'s Response at 14-15.)  Waymouth, however, concedes that it does not know if the LLCs are the incorporation of Marvin and Laura Horne d/b/a Raisin Valley Farms or if the LLCs are completely new entities.  (Id. at 16.) Waymouth further concedes that the entities were not created until May 2005, after the events complained of occurred.  (Id. at 4.)  Waymouth argues instead that "[n]othing provided by the defendants suggests that Raisin Valley LLC is not a successor in interest to Raisin Valley," therefore Waymouth, "should be allowed time for reasonable discovery efforts to ascertain the LLC's members to ensure that it is simply not an incorporation of the general partnership" between Marvin and Laura Horne d/b/a Raisin Valley Farms.  (Id.)

III.   **DISCUSSION**

A.   **Motion to Dismiss the Hornes and Raisin Valley Farms for Lack of Personal Jurisdiction**

1.   **Standard of Review**

While the plaintiff always carries the burden of proof, a plaintiff need only produce prima facie evidence of personal jurisdiction over a defendant to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996); Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992), cert. denied, 506 U.S. 908 (1992).  In assessing a plaintiff's evidence, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor.  Digi-Tel Holdings, Inc., 89 F.3d at 522.  Any "doubt[s] should be resolved in favor of retention of jurisdiction."  V.H. v. Estate of Birnbaum, 543 N.W.2d 649, 653 (Minn. 1996).  When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings.  Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998) (citing Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947) (noting that "when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist" and "the mode of its determination is left to the trial court"))[1]

2.   **Due Process and Personal Jurisdiction**

---

[1] "While in some cases it is more appropriate to test jurisdictional facts upon the proof adduced after full discovery, the court may properly address itself to the jurisdictional issue at any earlier stage of the proceedings where the affidavits and other exhibits presented on motion and opposition thereto make the issue ripe for early determination."  Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 n.3 (8th Cir. 1974) (citations omitted).

This Court has personal jurisdiction over a foreign defendant if a state court in Minnesota would also have jurisdiction. See Digi-Tel Holdings, Inc., 89 F.3d at 522. Minnesota's reach over foreign defendants extends to the fullest extent permitted by the United States Constitution. See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citing Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985) (en banc), cert. denied, 474 U.S. 1006 (1985)).

"[T]he constitutional touchstone [of personal jurisdiction] remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Id. at 475 (citations omitted). Thus, for the Court to acquire jurisdiction over a non-resident defendant, the defendant's contacts with Minnesota "must be sufficient to cause the defendant to 'reasonably anticipate being haled into court'" in Minnesota. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Eighth Circuit considers the following factors in determining whether personal jurisdiction is proper: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir. 1991). The first three factors are primary factors, the remaining two are secondary factors. Id. The Court looks to all of

8

the contacts in the aggregate and examines the totality of the circumstances in making

its determination.  Northrup King. Co. v. Compania Productora Semillas Algodoneras,

S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

The third factor, the relation of the cause of action to the contacts, distinguishes

whether the jurisdiction is specific or general. See Digi-Tel Holdings, Inc., 89 F.3d at

522 n.4.  "Specific jurisdiction refers to jurisdiction over causes of action arising from or

related to a defendant's actions within the forum state while general jurisdiction refers to

the power of a state to adjudicate any cause of action involving a particular defendant

regardless of where the cause of action arose." Id.  As alleged by Waymouth, Raisin

Valley Farms' contacts with Minnesota are all related to the contractual and warranty

dispute at the center of this litigation.  Thus, personal jurisdiction here is based upon

allegations of specific jurisdiction.

Waymouth contends this Court has specific personal jurisdiction over Raisin

Valley Farms.  (Pl.'s Response at 11-14.)  "Where specific personal jurisdiction over a

non-resident is asserted, due process is satisfied if the defendant has purposefully

directed its activities at forum residents, and the litigation results from injuries arising out

of, or relating to, those activities."  Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d

1100, 1103 (8th Cir. 1996).  Specific jurisdiction may exist even when "the nonresident's

contacts are minimal, but the cause of action arises out of or is related to those

contacts."  KSTP-FM, LLC v. Specialized Commc'ns, Inc., 602 N.W.2d 919, 923 (Minn.

Ct. App. 1999); see also Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414.

Even a single, isolated transaction between a nonresident defendant and a resident

plaintiff can be sufficient to justify exercising specific personal jurisdiction.  See e.g.,

McGee v. Int'l Life Ins. Co., 355 U.S. 220, 221-24 (1957).

In this case, the confirmations of the sales of raisins provided to Raisin Valley Farms by PACE via facsimile on the day of each confirmation lists the seller as "Raisin Valley Farms, 3678 N. Modoc, Kerman, CA 93630" and the buyer as "Waymouth Farms, 5300 Boone Avenue, New Hope, MN 55428."  (Id. Exs. C-D.)  The confirmations indicate that PACE is merely a broker of the deal and that "[a]ll obligations under th[e] agreement[s] are between buyer and seller as principal."  (Id.)  Moreover, Marvin Horne concedes that he "believe[d]" he knew "[i]n late November or early December" of 2003 that the customer for the raisins was Waymouth.  (Horne Aff. ¶ 22.)  Further, Horne concedes he received a bill of lading dated February 18, 2004 which indicates the Raisin Valley Farms raisins were "consigned" to Waymouth Farms in Minnesota.  (Id. Ex. F.)  Waymouth alleges that Raisin Valley Farms delivered to Waymouth (albeit FOB California) from January 2004 through June 2004 raisins that contained buckshot (Claiborn Aff. ¶ 12), the presence of which spawned this litigation.  The Court finds that during this period, Raisin Valley Farms knew the raisins it placed on its California dock would end up in Minnesota at Waymouth's processing plant.

Moreover, while Raisin Valley Farms may not have been the initial aggressor in that it did not specifically seek out a Minnesota buyer of its product, its broker did negotiate an initial sale of Raisin Valley Farm raisins in September of 2003 with a Minnesota company.  Additionally, the Court finds that, resolving all factual conflicts in Waymouth's favor, Raisin Valley Farms was aware that it was selling raisins to a Minnesota company prior to the December 2003 sale.  After the buckshot dispute arose, Marvin Horne concedes he directly communicated with Waymouth, and Horne has

provided the Court with at least one such written communication dated December 26, 2003.  (Horne Aff. Ex. G.)  Horne also acknowledges that he "had telephone conversations" with Waymouth about the buckshot allegations.  (Horne Aff. ¶ 37.)  On May 28, 2004, Horne again wrote to Waymouth concerning the buckshot issue.  (Id. Ex. I.)

Defendants cite a number of cases in support of their position that the Court has no specific personal jurisdiction over the Raisin Valley Farms.  For instance, Defendants cite Burlington Industries, Inc. v. Maples Industries, Inc., 97 F.3d 1100 (8th Cir. 1996).  In Burlington, the plaintiff corporation, a citizen of Delaware and North Carolina, brought a misappropriation of trade secrets claim against the defendant corporation, a citizen of Alabama, in federal court in the Eastern District of Arkansas.  Id. at 1100-01.  The plaintiff alleged that the defendant had purchased machines incorporating the plaintiff's trade secrets from a third-party company, a citizen of Arkansas, and that the third-party had previously hired former employees of the plaintiff.  Id. at 1102.

The issue before the court was whether the defendant had sufficient contacts with Arkansas.  Id. at 1103.  The district court determined that it possessed personal jurisdiction over the defendant.  Id. at 1101.  The Eighth Circuit reversed the district court's determination and remanded the case for entry of dismissal for want of personal jurisdiction.  Id. at 1103.  After finding no general jurisdiction existed, the Burlington court found that the only contacts related to the plaintiff's trade secrets claim was "at least 100" telephone calls between the defendant and the third-party manufacturer of the machines.  Id.  The court found that "while phone contacts remain a consideration, they are insufficient, alone, to confer personal jurisdiction."  Id.

Here, like the defendant in <u>Burlington</u>, Raisin Valley Farms had telephone contacts with the forum state.  That is where the similarity ends, however.  Unlike the defendant in <u>Burlington</u>, Raisin Valley Farms engaged in telephone conversations with <u>the plaintiff</u> (i.e., the buyer of its products), not a third-party, and <u>the plaintiff</u> here is a corporation with its principal place of business <u>in the forum state</u>.  Raisin Valley Farms made the telephonic contact with Minnesota because it knew it had sold raisins to a corporation in the forum state (Waymouth), the forum corporation had alleged harm in the forum state from Raisin Valley Farms' raisins, and a billing dispute over the raisins had arisen.  Raisin Valley Farms entered into the December contract with Waymouth, continued to operate under preexisting contracts with Waymouth, and attempted to modify its contract with Waymouth all while knowing its raisins were destined for and ending up in Minnesota.  Additionally, the claim in <u>Burlington</u>, that the defendant misappropriated the plaintiff's trade secrets by buying machines from a third-party, is much different than the contractual and warranty claims that Waymouth has brought against Defendants.  Here, Defendants are alleged to have actively engaged a broker who sold Defendants' raisins with, at least prior to one of the contracts, the knowledge that those raisins would be consigned to the forum state pursuant to contracts entered into by Waymouth and Defendants, followed by Defendants actively communicating with Plaintiff concerning the performance and possible modification of those contracts.  Finally, in addition to telephone calls, the contacts alleged here include letters, three contracts, and the raisins themselves which Waymouth understood would and did reach the forum state (at least starting with the December contract).

Defendants also cite <u>IFG Leasing Co. v. Tibbetts</u>, 675 F. Supp. 549 (D. Minn.

1987) in support of their position that no specific personal jurisdiction exists over Raisin Valley Farms.  In IFG Leasing, as part of the sale of a silo to a Wisconsin farmer, the Wisconsin silo manufacturer arranged to sell the silo to a Minnesota agricultural equipment company that in turn leased the silo to the Wisconsin farmer; the silo manufacturer guaranteed payment on the lease.  Id. at 548.  When neither the farmer nor the manufacturer paid the leasing company, the leasing company sued the farmer and manufacturer in federal court in Minnesota to recover funds owed to the leasing company under the lease.  Id.  The farmer and manufacturer argued that no personal jurisdiction existed over them in the forum state, Minnesota.  Id.  The court described the defendants' contacts with Minnesota as follows:

> Only very few specific contacts with Minnesota are alleged.  One affidavit is provided, which alleges that on November 19, 1984, [the farmer] phoned [the lessor] in Minnesota and successfully requested that a security held by [the lessor] . . . be released.  [The lessor] does make other claims of the defendants' contacts with Minnesota, although most are not in affidavits.  The [lessor] states that the leases and guarantees were solicited and entered in Minnesota, that checks were drawn and forwarded from Minnesota, and that there were several instances of telephone conversations and correspondence sent into Minnesota.  Further, some personal financial records of the [farmer] were reviewed by [the lessor] in Minnesota.

Id. at 549.

The IFG Leasing court also found that, "[n]one of the defendants engages in any regular business in Minnesota.  There is no claim that any of them has ever entered the state. [The manufacturer's] franchise agreement apparently prohibits it from engaging in business outside of Wisconsin."  Id.  The court found that the cause of action did directly relate to the defendants' contacts with Minnesota but found the contacts to be insufficient to hale the defendants into court in Minnesota.  Id. at 549-50.

The Court acknowledges that, while not controlling case law, the <u>IFG Leasing</u> case presents contacts similar to those in the present case.  But it is difficult to determine from the facts presented in <u>IFG Leasing</u> which contacts were allotted to the farmer defendant and which to the manufacturer defendant.  Further, it is not clear from the facts of that case to what extent the Court considered the matters submitted outside the pleadings which were not presented in affidavits.

At the motion hearing, Defendants argued that the <u>IFG Leasing</u> case was similar to the present action because it involved an agricultural product.  The only tangible "product" in the <u>IFG Leasing</u> case was the silo which apparently was sold by the defendant non-resident manufacturer to the co-defendant non-resident farmer and which was, presumably, located on the Wisconsin farm, outside the forum.  Moreover, the silo was not alleged to be defective.  To the extent the lease was a financial "product" and the failure to make payment on the lease was a "harm" occurring in the forum state, the Court finds these facts much different than the product and harm alleged in this case: thousands of pallets of raisins containing buckshot consigned to, and ultimately reaching, Minnesota.  At least as to the Wisconsin farmers, who were buying a silo from a Wisconsin manufacturer, their expectation of being haled into a Minnesota court was arguably not reasonably anticipated.  Finally, unlike the isolated lease document in <u>IFG Leasing</u>, here there are three contracts between Waymouth and Raisin Valley Farms and Raisin Valley Farms performed on those contracts not by putting a check in the mail to a forum state lessor (arranged by a non-resident manufacturer) but by preparing for shipment to Minnesota thousands of pallets of raisins over the course of months while knowing the buyer of that product was a forum

14

corporation—Waymouth.

Defendants also point to <u>Guinness Import Co. v. Mark VII Distribs., Inc.</u>, 153 F.3d 607, 616 (8th Cir. 1998) as a case where the court determined that personal jurisdiction over the third-party defendant was lacking and which involved a product similar to the agricultural product at issue here.  (Defs.' Reply at 8.)  Despite Defendants' representations, the facts in <u>Guinness</u> are much different than those presented in the present case.  In <u>Guinness</u>, a Jamaican beer manufacturer, Desnoes and Geddes, Ltd (D&G) contracted with Labatt from 1991 to 1995 to import the Jamaican beer into the United States.  153 F.3d at 609-10.  Labatt, in turn, contracted with Mark VII Distributors to distribute the beer in the United States.  <u>Id.</u> at 610.  In 1995, D&G terminated its contract with Labatt and contracted with a different importer, Guinness.  <u>Id.</u>  Mark VII approached Guinness about continuing on as the beer's distributor in the United States, but Guinness contracted with a different distributor.  <u>Id.</u>  Guinness then brought a declaratory judgment action in the District of Minnesota seeking a declaration that it was not liable to Mark VII for not contracting with Mark VII to distribute the beer.  <u>Id.</u>  Mark VII filed counterclaims against Guinness for a violation of a Minnesota beer brewers and wholesalers statute, tortious interference with contract and prospective economic relations, promissory and equitable estoppel, and unjust enrichment.  <u>Id.</u>  Mark VII also asserted a third-party action against D&G for violations of the Minnesota beer brewers and wholesalers statute.  <u>Id.</u>

The district court granted D&G's motion to dismiss for lack of personal jurisdiction.  <u>Id.</u>  In affirming, the Eighth Circuit determined that the basis alleged for jurisdiction over D&G was specific personal jurisdiction.  <u>Id.</u> at 614.  The Court found

that there was no contract between D&G and Mark VII, D&G exercised no control over the distribution of its products in the United States and did not control the importer's choice of distributor in any way, and D&G had no control over where the distributor chose to do business.  Id. at 614-15.  Given these facts, the Court found that the mere act of putting its beer into the "stream of commerce" was not sufficient to demonstrate that D&G had purposefully directed its activities at the state of Minnesota.  Id. at 615.

In contrast, here Raisin Valley Farms engaged the services of a broker to sell its raisins.  There is nothing in the record that suggests the broker was not able to sell raisins to Minnesota.  Through this broker, Raisin Valley Farms' raisins were sold and consigned to a Minnesota corporation that brought those raisins into Minnesota.  At least by the time of the December 3, 2003 contract, Raisin Valley Farms knew that Waymouth wanted Raisin Valley Farm raisins and entered into a third contract to provide those raisins.  It knew when it dropped the raisins off at its dock in California that they would be picked up by Waymouth and taken back to Minnesota.  After being inspected in Minnesota, the raisins were found to contain buckshot.  Thereafter, Raisin Valley Farms took affirmative steps to communicate with Waymouth via the telephone and the U.S. Mail concerning its contracts with Waymouth.  Finally, Raisin Valley Farms made overtures to Waymouth in an effort to modify those contracts.  The Court finds that these contacts with Minnesota are more than random, fortuitous, or attenuated contacts.  Burger King, 471 U.S. at 475 (citations omitted).

Defendants additionally cite Federal Insurance Co. v. Lake Shore, Inc., 886 F.2d 654 (4th Cir. 1989) as supporting its position that this Court lacks jurisdiction over Raisin Valley Farms.  In Federal Insurance, a manufacturer of a product shipped its product

16

aboard an ocean going vessel and the product was damaged while the vessel was docked in South Carolina when the winch malfunctioned and caused the product to fall. Id. at 656-57. The manufacturer's subrogated insurer (a citizen of New Jersey) brought claims in a federal court in South Carolina, pursuant to maritime and admiralty jurisdiction, against the shipbuilder (a citizen of Wisconsin) and the winch maker (a citizen of Michigan) for negligence, strict liability, and breach of warranties. Id. at 657. The district court dismissed the case for lack of personal jurisdiction. Id. In affirming, the Fourth Circuit Court of Appeals found that the allegations of jurisdiction over the defendants were primarily based upon allegations of general jurisdiction. Id. at 658-60. To the extent the Federal Insurance court found that specific jurisdiction had been alleged, the court stated, "We have some difficulty discerning how this action arises out of defendants' contacts with the forum when the sale of the winch and the manufacture and sale of the vessel all took place out of [the forum] state." Id. at 660. In addition to being non-controlling law, the Court finds that the Federal Insurance case primarily concerned allegations of general jurisdiction which are not relevant to the present case in which specific personal jurisdiction is alleged.

Defendants also cite Dent-Air, Inc. v. Beech Mountain Air Service, Inc., 332 N.W.2d 904 (Minn. 1983) in support of its contention that personal jurisdiction over Raisin Valley Farms is lacking. In Dent-Air, Inc., the plaintiff, a citizen of Minnesota, owned airplanes through his corporation and sought out customers to lease those planes. Id. at 906. Over the course of several months, the plaintiff secured three leases with the defendants, citizens of North Carolina, and delivered the planes to the defendants in Tennessee and Georgia. Id. Plaintiff later sued defendants in Minnesota

state court alleging that the defendants had breached the lease agreements.  The state

district court denied the defendants' motion to dismiss for lack of personal jurisdiction.

Id. at 905.

On appeal, the Minnesota Supreme Court found personal jurisdiction wanting

and reversed the district court.  Id. at 909.  The Dent-Air court found that the

defendants, despite entering into three leases with the plaintiff and sending financial

papers to Minnesota, were not subject to the court's jurisdiction.  Id. at 907-09.  The

court stated that the "forseeability of an impact alone is not sufficient to confer personal

jurisdiction" but "aggressive initiation by the nonresident" was required to confer

jurisdiction.  Id. at 907-08.  Because the plaintiff initiated the first lease with defendants

by seeking out the defendants, making all the arrangements for the lease, and traveling

to the nonresidents' state to negotiate and execute the lease, the court found that no

personal jurisdiction existed over the defendants and that the defendants' "requests for

subsequent leases were more closely akin to . . . 'inquiries' . . . than to any aggressive

solicitation."  Id. at 908.  The Court acknowledges that Raisin Valley Farms did not

initially seek out Waymouth farms as a customer for its raisins.  But Waymouth's

conduct is distinguishable from the largely unilateral conduct of the plaintiff in Dent-Air.

The Court finds the totality of Raisin Valley Farms' contacts with the forum state,

including entering into three contracts and its written and telephonic communications

with Waymouth about the allegedly defective raisins, the payment dispute, and the

potential modification of the Waymouth contract, demonstrates sufficient aggressive

conduct to meet the jurisdictional barrier described in Dent-Air.

Defendants contend that knowledge of a product's destination cannot form the

18

basis for jurisdiction and cite Exito Elecs. Co. v. Trejo, 166 S.W.3d 839 (Tex. Ct. App. 2005) as proof of the veracity of this contention.  (Defs.' Reply at 8.)  In Exito, the Texas Court of Appeals found that no personal jurisdiction existed over one of the defendants in the case and reversed the trial court as to that defendant.  The Exito court conceded that "foreseeability is implicit in the 'substantial connection' requirement" for personal jurisdiction to attach.  Exito, 166 S.W.3d at 856.  Proving a defendant's actual knowledge that its product will enter the forum state certainly is one way to meet the foreseeability requirement.  It is true that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."  Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987) (emphasis added).  The Exito case is an example of this general rule of law.  In Exito, the Texas Court of Appeals determined that there was no evidence that the retail product at issue would be delivered to retail stores in the forum state or that the defendant knew forum state consumers would purchase the product.  Exito, 166 S.W.3d at 855.  The Court suggested, however, that the result would be different were the evidence established that the defendant company was aware its shipments were sent directly to forum state retailers, it forwarded invoices directly to forum state retailers, and it had letters of credit with forum state companies.  Id.  In this case, the Court finds that the record reflects that Raisin Valley Farms' contacts with Minnesota extend far beyond "the mere act" of placing its raisins in the stream of commerce.

The Court finds that, while any one of the above alleged contacts, alone, might be insufficient to demonstrate that the Hornes d/b/a Raisin Valley Farms purposefully

established minimum contacts in Minnesota, the Hornes d/b/a Raisin Valley Farms

personally engaged in a series of contacts with Minnesota over several months

including entering into multiple contracts with a Minnesota company, preparing

thousands of pallets of raisins known to be consigned to a Minnesota company,

engaging in and initiating multiple communications by telephone and the U.S. Mail with

the Minnesota company about the subject of the contracts when the buckshot and

financial disputes arose, and offering to modify the contracts in an effort to continue the

business relationship between Raisin Valley Farms and Waymouth.  Given the above,

the Court finds that Raisin Valley Farms' contacts extended beyond merely "attempting

to get paid" as Defendants suggest.  (Defs.' Reply at 9.)  The Court finds that the

aggregate contacts alleged in the Complaint and contained in the materials submitted

outside the pleadings are sufficient for the Hornes, d/b/a Raisin Valley Farms, to have

reasonably anticipated being haled into court in Minnesota early on in the Raisin Valley

Farms-Waymouth business relationship.  See Northrup King. Co., 51 F.3d at 1388.

Thus, the Court finds that the first three, and primary, factors of personal jurisdiction set

forth in Dakota Industries weigh in favor of finding personal jurisdiction over Raisin

Valley Farms.  946 F.2d at 1390.

The remaining factors to consider are (1) the interest of the forum state in

providing a forum for its residents, and (2) the convenience of the parties.  Id.  The

Court finds that Minnesota does have an interest in seeing the alleged harms to a

Minnesota company, Waymouth, litigated in this forum.  Finally, the Court finds that

some inconvenience to the parties will arise whether the litigation goes forward in

Minnesota or California.  The Defendants and the raisin packing machinery is in

20

California but the buckshot in the raisins was detected in Minnesota and presumably witnesses exist in both California and Minnesota.  The Court finds that the inconvenience to the parties is a neutral factor in determining whether the Hornes d/b/a Raisin Valley Farms should be haled into Court in Minnesota.

Therefore, the Court recommends that Defendants' motion to dismiss the Hornes d/b/a Raisin Valley Farms for lack of personal jurisdiction be denied.

**B.**     **Motion to Dismiss Raisin Valley Farms, LLC and Raisin Valley Farms Marketing, LLC**

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997).  Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief."  Coleman v. Watt, 40 F.3d 255, 258 (8th. Cir. 1994).  Although "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), a court may dismiss "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations."  Hishon, 467 U.S. at 73.

Here, Defendants contend that Raisin Valley Farms, LLC and Raisin Valley Farms Marketing, LLC did not come into existence as legal entities until after the contracts complained of were executed.  (Defs.' Mem. at 2.)  Waymouth concedes this may be true but argues that Defendants' motion to dismiss should be denied and that it

be allowed discovery as to the true relationship between the LLCs, the Hornes, and their assumed name, Raisin Valley Farms.  Waymouth has an obligation to make factual allegations that, if true, drawing all reasonable inferences from the Complaint in Waymouth's favor, would set forth a viable claim for relief against the LLC entities.

Waymouth's Complaint contains only one factual allegation that specifically references the LLC entities.  Waymouth alleges that "various letters, invoices, and other documentation refer to Raisin Valley Farms, LLC, Raisin Valley Farms Marketing, LLC, and Raisin Valley Farms interchangeably."  (Compl. ¶ 7.)  Waymouth now appears to concede that the LLC entities were formed after the events complained of occurred.  But Waymouth does contend that "nothing provided by the defendants suggests that Raisin Valley LLC is not a successor in interest to" the Horne's general partnership which operated under the assumed name Raisin Valley Farms.  (Pl.'s Response at 4.) While this allegation does not appear in Waymouth's Complaint, Waymouth's Complaint does refer to all of the named defendants—Raisin Valley Farms, LLC, Raisin Valley Farms Marketing, LLC, and Marvin and Laura Horne d/b/a Raisin Valley Farms—collectively as "Raisin Valley" and alleges that "Raisin Valley" was the actor in each of the factual allegations set forth in the Complaint.  (See Complaint at 1-3.)  Waymouth also alleges in its Complaint that all of the defendants have their principal place of business in Kerman, California and that the LLC entities are processors of raisins.  (Compl. ¶ 2.) Given the collective reference to the general partnership and LLC entities as "Raisin Valley" and the alleged identical places of business and purposes of each of the Defendants, drawing all reasonable inferences in Waymouth's favor, the Court finds that the allegations are sufficient at this stage of the litigation to state a cause of action

against the LLC entities as successors in interest to Marvin and Laura Horne d/b/a

Raisin Valley Farms.  Therefore, the Court recommends that Defendants' motion to

dismiss the claims against Raisin Valley Farms, LLC and Raisin Valley Farms

Marketing, LLC be denied.

Based upon the foregoing, and all the files, records and

proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1.      Defendants' Motion to Dismiss (Doc. No. 8) be **DENIED**.


Dated: March 16, 2006

    <u>  s/ Susan Richard Nelson        </u>
SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by <u>March 31, 2006</u>, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Any party wishing to oppose such objections must file and serve all parties with its response.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.